1
2
3
4
5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

6

JOHN E.L.,

7
                                        Plaintiff,

8       v.

9       COMMISSIONER OF SOCIAL
        SECURITY,

10
                                        Defendant.

Case No. 3:20-cv-5776-TLF

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

11

12          Plaintiff has brought this matter for judicial review of defendant's denial of his

13      application for disability insurance ("DIB") benefits.

14          The parties have consented to have this matter heard by the undersigned Magistrate

15      Judge. 28 U.S.C. § 636(c); Federal Rule of Civil Procedure 73; Local Rule MJR 13.

16                              I.      ISSUES FOR REVIEW

17          1.  Did the ALJ err at step two of the sequential evaluation process, in finding

18              Plaintiff's headaches and gastrointestinal problems to be non-severe

19              impairments?

20          2.  Did the ALJ properly evaluate the medical opinion evidence?

21          3.  Did the ALJ properly evaluate Plaintiff's subjective symptom testimony?

22          4.  Did the ALJ properly evaluate lay witness testimony from Plaintiff's mother?

23          5.  Was the ALJ's RFC determination supported by substantial evidence?

24          6.  Is Plaintiff entitled to remand for an award of benefits?

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 1

1

2                            II.      BACKGROUND

3          On October 20, 2017, Plaintiff filed an application for DIB, alleging in this

4   application a disability onset date of April 30, 2017. Administrative Record ("AR") 188.

5   Plaintiff's application was denied upon official review and upon reconsideration. AR 79,

6   96. A hearing was held before Administrative Law Judge ("ALJ") Eric A. Basse on May

7   8, 2019. AR 37–78. On June 26, 2019, ALJ Basse issued a decision finding that Plaintiff

8   was not disabled. AR 15–36. On May 29, 2020, the Social Security Appeals Council

9   denied Plaintiff's request for review. AR 1–6.

10         Plaintiff seeks judicial review of the ALJ's June 26, 2019 decision. Dkt. 1.

11                          III.     STANDARD OF REVIEW

12         Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's

13  denial of Social Security benefits if the ALJ's findings are based on legal error or not

14  supported by substantial evidence in the record as a whole. *Revels v. Berryhill*, 874

15  F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "such relevant evidence as a

16  reasonable mind might accept as adequate to support a conclusion." *Biestek v.*

17  *Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

18                            IV.      DISCUSSION

19         In this case, the ALJ found that Plaintiff had the severe, medically determinable

20  impairments of lumbar degenerative disc disease, chronic obstructive pulmonary

21  disease/respiratory condition, fibromyalgia, hearing loss, neurocognitive disorder, and

22  diabetes mellitus with neuropathy. AR 20. Based on the limitations stemming from these

23  impairments, the ALJ found that Plaintiff could perform a reduced range of sedentary

24  work. AR 23. Relying on vocational expert ("VE") testimony, the ALJ found at step four

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 2

that Plaintiff could not perform his past relevant work, but could perform other light, unskilled jobs at step five of the sequential evaluation; therefore, the ALJ determined at step five that Plaintiff was not disabled. AR 27–28.

    1.  <u>Whether the ALJ Erred at Step Two</u>

At step two, the "medical severity" of a claimant's impairments is considered.  20 C.F.R. § 404.1520(a)(4)(ii), § 416.920(a)(4)(ii). An impairment is not considered to be "severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c); Social Security Ruling (SSR) 96-3p, 1996 WL 374181, at *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1522(b), 416.920(c); SSR 85-28, 1985 WL 56856, at *3.

The ALJ must consider all limitations and restrictions when formulating the RFC, even those stemming from impairments that are not "severe*." See Buck v. Berryhill,* 869 F.3d 1040, 1049 (2017); 20 C.F.R. § 404.1520(e). A plaintiff has the burden to show (1) he has a medically determinable impairment or combination of impairments; (2) the impairment or combination of impairments is severe; and (3) the impairment lasted at least 12 months. *See Bowen v. Yuckert*, 482 U.S. 137, 146, (1987); 20 C.F.R. § 404.1520(c), 416.920(c).

The step two inquiry is a *de minimis* screening device used to dispose of groundless claims. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). The Ninth Circuit emphasized in *Buck v. Berryhill* that this inquiry "is not meant to identify the impairments that should be taken into account when determining the RFC." 869 F.3d at 1048–49 (rejecting claim that ALJ erred after second hearing, where ALJ found

new severe impairments but did not change RFC). The court noted that an ALJ

assessing a claimant's RFC before steps four and five "must consider limitations and

restrictions imposed by all of an individual's impairments, even those that are not

'severe.'" *Id.* at 1049 (citing Titles II & XVI: Assessing Residual Functional Capacity in

Initial Claims, Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *5 (S.S.A. July

2, 1996)).

Thus, the RFC "should be exactly the same regardless of whether certain

impairments are considered 'severe' or not" at step two. *Id.* In *Buck,* the Ninth Circuit

concluded that because the ALJ decided step two in the claimant's favor and was

required to consider all impairments in the RFC, whether "severe" or not, "[a]ny alleged

error is therefore harmless and cannot be the basis for a remand." *Id.* (citing *Molina v.

Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)).

The same is true here. Because the ALJ decided step two in plaintiff's favor, the

ALJ was required to consider evidence of any and all impairments, severe or not, in

assessing plaintiff's RFC.

Some courts have distinguished *Buck* on the basis that the ALJ's RFC analysis

showed that the ALJ did not consider certain impairments in the RFC after finding them

non-severe at step two. *See Mercado v. Berryhill*, No. 16-CV-04200-BLF, 2017 WL

4029222, at *6 (N.D. Cal. Sept. 13, 2017); *Winkle v. Berryhill*, No. C17-1633 TSZ, 2018

WL 5669018, at *2 (W.D. Wash. Nov. 1, 2018). Here, the ALJ's decision shows he

considered plaintiff's headaches and gastrointestinal issues in the RFC assessment. AR

24–25. In particular, the ALJ considered plaintiff's own testimony that these conditions

caused functional limitations. *Id.* Accordingly, to the extent plaintiff contends that the

1    ALJ erred in failing to properly incorporate these impairments in his RFC, his argument

2    is addressed below.

3         <u>2. Did the ALJ Properly Evaluate the Medical Opinion Evidence?</u>

4        Plaintiff assigns error to the ALJ's evaluation of medical opinions from Hayden

5    Hamilton, M.D., Lynn Staker, M.D., Myrna Palasi, M.D., and Corey H. Findlay, D.C. Dkt.

6    16, pp. 2–5. Plaintiff also assigns error to the ALJ's reliance on the opinions of non-

7    examining medical consultants; however, an ALJ is not required to give reasons for

8    crediting, as opposed to rejecting, medical opinion evidence. *Howard v. Barnhart*, 341

9    F.3d 1393, 1395 (9th Cir. 1984).

10       Finally, Plaintiff summarizes the opinion of Robert Rubenstein, M.D., but argues

11    only that this opinion "undermines the ALJ's reasons for rejecting [Plaintiff]'s testimony."

12    Dkt. 16, p. 4. The Court will not consider matters that are not "'specifically and

13    distinctly'" argued in the plaintiff's opening brief. *Carmickle v. Commissioner, Social*

14    *Sec. Admin.*, 533 F.3d 1155, 1161 n. 2 (9th Cir. 2008) (quoting *Paladin Assocs., Inc. v.*

15    *Mont. Power Co.*, 328 F.3d 1145, 1164 (9th Cir. 2003)). The Court thus does not

16    consider the ALJ's evaluation of any opinions other than those specifically raised.

17        <u>A. Medical Opinion Standard of Review</u>

18        Under current Ninth Circuit precedent, an ALJ must provide "clear and

19    convincing" reasons to reject the uncontradicted opinions of an examining doctor, and

20    "specific and legitimate" reasons to reject the contradicted opinions of an examining

21    doctor. *See Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995).

22        The Social Security Administration changed the regulations applicable to

23    evaluation of medical opinions; hierarchy among medical opinions has been eliminated,

24

25

but ALJs are required to explain their reasoning and specifically address how they considered the supportability and consistency of each opinion. *See* 20 C.F.R. § 416.920c; Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017).

Regardless whether a claim pre- or post-dates this change to the regulations, an ALJ's reasoning must be supported by substantial evidence and free from legal error. *Ford v. Saul*, 950 F.3d 1141, 1153-56 (9th Cir. 2020) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008)); *see also Murray v. Heckler*, 722 F.2d 499, 501–02 (9th Cir. 1983).

Under 20 C.F.R. § 416.920c(a), (b)(1)-(2), the ALJ is required to explain whether the medical opinion or finding is persuasive, based on whether it is supported and whether it is consistent. *Brent S. v. Commissioner, Social Security Administration*, No. 6:20-CV-00206-BR, 2021 WL 147256 at *5 - *6 (D. Oregon January 16, 2021).

These are the two most important factors in the ALJ's evaluation of medical opinions or findings; therefore, "[t]he 'more relevant the objective medical evidence and supporting explanations presented' and the 'more consistent' with evidence from other sources, the more persuasive a medical opinion or prior finding." *Linda F. v. Saul*, No. C20-5076-MAT, 2020 WL 6544628, at *2 (quoting 20 C.F.R. § 404.1520c(c)(1)-(2)).

B. Opinion of Dr. Hamilton

Hayden Hamilton, M.D., evaluated Plaintiff on March 11, 2018, by reviewing Plaintiff's medical records, interviewing Plaintiff, and administering a physical examination. *See* AR 614–18. Based on his evaluation, Dr. Hamilton opined that Plaintiff could stand for a maximum of three hours in an eight-hour workday and sit for a

maximum of six hours. AR 618. According to Dr. Hamilton, Plaintiff could lift loads of 20 pounds occasionally and 10 pounds frequently; Plaintiff would need to avoid climbing ladders, scaffolds and ropes, but could perform other postural activities occasionally. *Id.* As for environmental or non-exertional limitations, Dr. Hamilton stated that Plaintiff would need to avoid working around hazards, unprotected heights, heavy machinery, temperature extremes, or chemicals. AR 617–18.

The ALJ found this opinion persuasive, but did not adopt Dr. Hamilton's opinion regarding the limitation to sitting for six hours at a time. AR 23. The ALJ "need not discuss all evidence presented." *Vincent ex rel. Vincent v. Heckler*, 739 F.3d 1393, 1394–1395 (9th Cir. 1984). However, the ALJ "may not reject 'significant probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570–571 (9th Cir. 1995) (*quoting Vincent*, 739 F.2d at 1395). The "ALJ's written decision must state reasons for disregarding [such] evidence." *Flores*, 49 F.3d at 571.

Here, the ALJ failed to incorporate Dr. Hamilton's opinion that Plaintiff is able to sit for up to six hours in an eight-hour workday. *See* AR 23. "Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Commissioner of Social Security Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196, 67 S. Ct. 1575, 91 L. Ed. 1995 (1947)).

Accordingly, because the ALJ found Dr. Hamilton's opinion persuasive but did not include all the limitations contained therein in the RFC and also did not explain why

the six-hour limitation on sitting was omitted, the ALJ erred by failing to consider significant probative evidence. *See Flores*, 49 F.3d at 570–571.

As the ALJ found the medical opinion persuasive but did not include in the RFC all the limitations contained therein or explain how the RFC reflects all the limitations, the RFC is the result of harmful error. *See Valentine v. Commissioner, Social Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) ("an RFC that fails to take into account a claimant's limitations is defective"); *Watson v. Astrue*, 2010 WL 4269545, *5 (C.D. Cal. Oct. 22, 2010) (finding the ALJ's RFC determination and hypothetical questions posed to the vocational expert defective when the ALJ did not properly consider a doctor's findings).

The ALJ found Dr. Hamilton's opinion persuasive but did not consider Dr. Hamilton's opinion in its entirety or include in the RFC all the limitations contained therein. Therefore, the Court finds the ultimate disability determination may have changed if the ALJ properly considered Dr. Hamilton's opinion. Accordingly, the Court directs the ALJ to reassess Dr. Hamilton's opinion on remand.

C. Opinions of Drs Staker and Palasi

Lynn L. Staker, M.D., evaluated Plaintiff on April 25, 2018, including reviewing records, interviewing Plaintiff and administering a physical examination. *See* AR 622–24. She opined that Plaintiff would be limited to sedentary work. AR 619–21. Summarizing her assessment, Dr. Staker stated that

> He does need to have medical follow up. At this point, he has had the x-ray of his back showing degenerative disc [disease] at L4-S1 [vertebrae]. He has some complaint of pain in his shoulders with full range of motion. From an orthopedic standpoint, I do not have any specific recommendations regarding his bone and joint problem. He does need medical follow up and felt like he needs a full medical workup.

AR 623.

On May 29, 2018, Myrna Palasi, M.D., reviewed Plaintiff's medical records and opined that Plaintiff suffered from chronic fatigue syndrome, chronic obstructive pulmonary disease, and fibromyalgia, rating the severity of these conditions as 2 out of 5; and diabetes mellitus, rating the severity of that condition as 3 out of 5. AR 954. In addition, she opined that Plaintiff would be unable to perform work at any exertional level except sedentary. AR 953.

The ALJ rejected both doctors' opinions, reasoning that the limitations contained therein were inconsistent with (1) Dr. Staker's examination results and (2) the overall record. However, the ALJ did not explain why either of these items were inconsistent with a limitation to sedentary work. "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988).

In addition, this reasoning does not account for the nature of fibromyalgia, which is characterized by an "absence of symptoms that a lay person may ordinarily associate with joint and muscle pain." *Rollins v. Massanari*, 261 F.3d 853, 863 (9th Cir. 2001) (Ferguson, J., dissenting) (quoting Muhammad B. Yunus, "Fibromyalgia Syndrome: Blueprint for a Reliable Diagnosis," *Consultant*, June 1996, at 1260). The condition is diagnosed "entirely on the basis of the patient's reports of pain and other symptoms." *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004). Thus, "normal findings" in objective physical exams do not contradict the conclusions of Drs. Staker and Palasi regarding the effect of Plaintiff's fibromyalgia. The difference between the physical

1    exams and these doctors' findings does not constitute a sufficient reason for discounting

2    the latter. *Revels v. Berryhill,* 874 F.3d 648, 662-665 (2017).

3         D. Opinion of Dr. Findlay

4         Corey H. Findlay DC, Plaintiff's treating chiropractor since 2010, wrote an opinion

5    on Plaintiff's limitations on July 27, 2018. *See* AR 744–45. He noted that Plaintiff

6    "originally presented with mild neck and back symptoms[,]" but "[t]hrough the years his

7    musculoskeletal system has declined and deteriorated at an aggressive level." AR 744.

8    After noting Plaintiff's impairments had intensified since late 2016, Dr. Findlay wrote that

9            His care now with me consists of chiropractic adjustments which
10           provide a short-term relief for him and are no longer controlling the
             advancing osteoarthritic changes he is experiencing. His prognosis is poor
11           even with continuing care. It is my opinion that there is [an] underlying
             pathology that is causing his musculoskeletal system to deteriorate. This
12           could be from several diseases his has been diagnosed with such as
             diabetes, COPD and fibromyalgia and certainly from another pathology
13           that has [not] yet been identified. I do not see [Plaintiff] returning to work
             due to his current condition.

14   AR 744–45.

15        Plaintiff avers that the ALJ erred in not incorporating all of Dr. Findlay's limitations

16   in the RFC. However, Plaintiff's argument is conclusory. Plaintiff thus falls short of

17   meeting his burden to show the ALJ harmfully erred. *See Carmickle v. Commissioner,*

18   *Social Sec. Admin.*, 533 F.3d 1155, 1161 n. 2 (9th Cir. 2008) (quoting *Paladin Assocs.,*

19   *Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1164 (9th Cir. 2003)). (declining to address

20   issues not argued with any specificity).

21        3. Did the ALJ Properly Evaluate Plaintiff's Subjective Symptom Testimony?

22        Next, Plaintiff assigns error to the ALJ's evaluation of Plaintiff's subjective

23   testimony regarding his physical symptoms. Dkt. 16, p. 5.

24

25

1    To reject a claimant's subjective complaints, the ALJ's decision must provide

2    "specific, cogent reasons for the disbelief." *Lester*, 81 F.3d at 834 (citation omitted).

3    The ALJ "must identify what testimony is not credible and what evidence undermines

4    the claimant's complaints." *Id.*; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

5    Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for

6    rejecting the claimant's testimony must be "clear and convincing." *Lester*, 81 F.2d at

7    834. "[B]ecause subjective descriptions may indicate more severe limitations or

8    restrictions than can be shown by medical evidence alone," the ALJ may not discredit a

9    subjective description "solely because it is not substantiated affirmatively by objective

10   medical evidence." *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

11   At his hearing, Plaintiff testified that his blood sugar ranges from 50 to 300, and

12   he has four or five low spells per week. AR 47. He alleged that this caused weakness,

13   an increased heart rate, confusion, shaking, and sweats AR 47–48, 57.

14   As for neuropathy symptoms, Plaintiff testified to experiencing numbness, tingling,

15   shooting, stabbing, cold, shivers, and goosebumps, as well as bladder and colon

16   problems. AR 48. Plaintiff testified that he has had continuous headaches for nine years

17   and that no medication has helped, which "always" cause problems with paying

18   attention "[a]ll day." AR 49, 60. Plaintiff also testified that he has problems being on his

19   feet, bending over, or using his hands throughout the day. AR 53–54.

20   Plaintiff testified that he could not do a simple job continuously for eight hours

21   because he would have fatigue, and a "[b]athroom trip could take an hour" due to

22   constipation, cramping and diarrhea caused by irritable bowel syndrome. AR 50–51. He

23

24

25

1   has to lie down and rest or nap during the day on five out of seven days, for four to six

2   hours at a time. AR 51.

3      The ALJ found that Plaintiff's subjective symptom testimony was not fully

4   credible, specifically finding inconsistency between the testimony and (1) objective

5   medical evidence; (2) Plaintiff's ability to work full-time even while some of his

6   symptoms were occurring; and (3) Plaintiff's activities of daily living. AR 24–26.

7      With respect to the ALJ's first reason, "[c]ontradiction with the medical record is a

8   sufficient basis for rejecting a claimant's subjective testimony." *Carmickle*, 533 F.3d at

9   1161. But a mere "lack of medical evidence cannot form the sole basis for discounting

10  [symptom] testimony." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Here,

11  evidence the ALJ cited did not contradict Plaintiff's testimony.

12     The ALJ found that Plaintiff showed "no significant abnormality in gait and

13  station; grip or dexterity; muscle tone, strength; balance; joint range of motion; or

14  neurological function," as well as walking without an assistive device AR 25. Yet these

15  normal findings do not contradict Plaintiff's allegations, for example, of neuropathy or

16  headaches. Findings of normal grip strength in a physical examination do not contradict

17  Plaintiff's testimony about the duration of his grip -- that his hands would stiffen if he

18  tried to grip an item, such as a soup spoon, for too long. AR 53. Similarly, a normal gait

19  walking across a doctor's office does not contradict Plaintiff's testimony that it was

20  difficult to be on his feet for more than an hour at a time. *Id*. The ALJ cited observations

21  Plaintiff was in "no acute distress," but Plaintiff's symptoms are chronic, not acute. AR

22  26.

23

24

25

In addition, as discussed above, reliance on normal medical imaging does not contradict Plaintiff's complaints, particularly when the complaints pertain to symptoms of fibromyalgia, which is characterized by an "absence of symptoms that a lay person may ordinarily associate with joint and muscle pain." *Rollins*, 261 F.3d at 863.

With respect to the ALJ's second reason, "[o]ccasional symptom-free periods—and even the sporadic ability to work—are not inconsistent with disability." *Lester*, 81 F.3d at 833. Nor is the ability to work before the alleged disability onset date inconsistent with an assertion of disability *after* the alleged onset date, despite a claimant having some impairments. Indeed, were the Court to accept the ALJ's reasoning and hold that a claimant's ability to work before the alleged onset date was indicative of their ability *after* the onset date, only claimants who had never been able to work in their lives would be found eligible for disability benefits. This reasoning is not supported by substantial evidence.

With respect to the ALJ's third reason, inconsistency with a claimant's activities may serve as a proper basis for rejecting a medical source's opinion. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). Yet disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citing *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits)).

Here, the ALJ cited Plaintiff's ability to adhere to scheduled medical appointments, and drive a car, as well as Plaintiff's ability to shop for groceries, clean, dress himself, and attend to his personal hygiene. AR 24–25. The ALJ failed to explain

how any of these activities contradicted Plaintiff's testimony. The ALJ also provided a thorough description of driving a car, including operating pedals and levers and focusing, but again failed to explain how this contradicted Plaintiff's testimony. AR 26. Conflict with activities was not a clear and convincing reason to discount Plaintiff's testimony.

A.  Harmless Error

Harmless error principles apply in the Social Security context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see Molina*, at 1115. The determination as to whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118-19 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)).

Here, the ALJ improperly discounted Plaintiff's subjective complaints, as well as Drs. Hamilton's, Staker's, and Palasi's opinions on Plaintiff's limitations, in making an RFC assessment. This RFC informed the ALJ's conclusion that Plaintiff was not disabled. Because the erroneous adverse credibility determination was of consequence to the ultimate determination of disability, the error was harmful.

4. Did the ALJ Properly Evaluate Lay Witness Testimony?

Plaintiff assigns error to the ALJ's failure to evaluate a lay witness statement from Plaintiff's mother. Dkt. 16, p. 10.

On November 5, 2017, Plaintiff's mother submitted a third-party function report in which she described her observations of Plaintiff's limitations. *See* AR 259–64. Therein, she stated that Plaintiff "does very little in a day. He sleeps, paces, tries to find a way to relieve his pain, spends a lot of time on the toilet, [and] goes to Drs. Appointments[.]" AR 259. She noted his fatigue, stating Plaintiff "is exhausted all the time. He does not feel refreshed when he wakes up. He can't get comfortable because his body hurts;" "[he] gets very sleepy and has trouble concentrating," and "[h]e also suffers from daily migraines, pain all over his body, and he has severe intestinal problems." AR 262. In addition, she stated Plaintiff was no longer capable of maintaining hobbies or attending social functions. AR 264. She noted his neuropathy caused him to drop items, most physical activity was very painful, and he would have to stop every 15 minutes for about 15 minutes when he walked. AR 264.

The ALJ did not address this statement in his decision. For cases filed prior to March 27, 2017, the Court would uphold the ALJ's decision to discount the opinion of a non-acceptable medical source, such as a friend or a family member, if the ALJ provided "reasons germane to each witness for doing so." *Turner v. Commissioner of Social Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010) (citing *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); 20 C.F.R. § 404.1502.

For cases filed after March 27, 2017, such as this one, an ALJ is "not required to articulate" how he or she evaluated evidence from non-medical sources such as educational personnel, public and private social welfare agency personnel, and other lay witnesses. 20 C.F.R. § 404.1502(e).

1    Accordingly, the ALJ did not err by neither articulating any reasoning, nor

2  indicating whether the ALJ considered this evidence.

3    5. Was the ALJ's RFC Determination Supported by Substantial Evidence?

4    Finally, Plaintiff maintains the RFC and Step Five findings are not supported by

5  substantial evidence. Dkt. 16, pp. 11–12.

6    The Court has found the ALJ committed harmful error, necessitating the ALJ's

7  reassessment of opinions from Drs. Hamilton, Staker, and Palasi regarding Plaintiff's

8  psychological limitations, as well as Plaintiff's testimony, on remand. *See* Sections

9  IV.2.–IV.4., *supra*. Therefore, the ALJ shall reassess the RFC on remand. *See* Social

10  Security Ruling 96-8p, 1996 WL 374184 (1996) (an RFC "must always consider and

11  address medical source opinions"); *Valentine*, 574 F.3d at 690 ("an RFC that fails to

12  take into account a claimant's limitations is defective"). As the ALJ must reassess

13  Plaintiff's RFC, the ALJ is directed to re-evaluate Step Five to determine whether there

14  are jobs existing in significant numbers in the national economy Plaintiff can perform

15  given the RFC.

16    6. Remand With Instructions for Further Proceedings

17    Plaintiff asks that this Court remand his case for an immediate award of benefits.

18  Dkt. 16, pp. 13–14. "'The decision whether to remand a case for additional evidence, or

19  simply to award benefits[,] is within the discretion of the court.'" *Trevizo v. Berryhill*, 871

20  F.3d 664, 682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir.

21  1987)). If an ALJ makes an error and the record is uncertain and ambiguous, the court

22  should remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041,

23  1045 (9th Cir. 2017). Likewise, if the court concludes that additional proceedings can

24

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 16

1    remedy the ALJ's errors, it should remand the case for further consideration. *Revels*,

2    874 F.3d at 668.

3        The Ninth Circuit has developed a three-step analysis for determining when to

4    remand for a direct award of benefits. Such remand is generally proper only where

5        "(1) the record has been fully developed and further administrative
6        proceedings would serve no useful purpose; (2) the ALJ has failed to
         provide legally sufficient reasons for rejecting evidence, whether claimant
7        testimony or medical opinion; and (3) if the improperly discredited
         evidence were credited as true, the ALJ would be required to find the
8        claimant disabled on remand."

     *Trevizo*, 871 F.3d at 682-83 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir.

9    2014)).

10       The Ninth Circuit emphasized in *Leon v. Berryhill* that even when each element is

11   satisfied, the district court still has discretion to remand for further proceedings or for

12   award of benefits. 80 F.3d at 1045.

13       Here, outstanding issues require resolution before benefits may be awarded.

14   Conflicts exist between the opinion of Dr. Staker and those of the other medical

15   sources, as well as between these opinions and Plaintiff's testimony. AR 24–26. "In any

16   event, the ALJ is the final arbiter with respect to resolving ambiguities in the medical

17   evidence." *Tommasetti*, 533 F.3d at 1042 (citing *Andrews v. Shalala*, 53 F.3d 1035,

18   1039–40 (9th Cir. 1995)). Remand is required so that the ALJ may evaluate the medical

19   opinions, as well as any new evidence and any new testimony from Plaintiff, and

20   determine whether Plaintiff is disabled.

21

22

23

24

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 17

1

CONCLUSION

2          Based on the foregoing discussion, the Court finds the ALJ erred when he

3   determined plaintiff to be not disabled. Defendant's decision to deny benefits therefore

4   is REVERSED and this matter is REMANDED for further administrative proceedings.

5          Dated this 5th day of November, 2021.

6

7

8

9          Theresa L. Fricke
           United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25